# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LUIS MENDOZA-ALARCON,

      **Movant/Defendant,**

v.                                                           **No. 19-cv-0613 JCH/SMV**
                                                             **No. 14-cr-3758 JCH**

UNITED STATES OF AMERICA,

      **Respondent.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO DENY MOVANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE AND MOTION FOR AN EVIDENTIARY HEARING

THIS MATTER is before me on Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence and Motion for an Evidentiary Hearing [Doc. 1],[1] filed on July 8, 2019.  The United States responded on September 5, 2019.  [Doc. 7].  Movant replied on September 6, 2019.  [Doc. 8].  The Honorable Judith C. Herrera, Senior United States District Judge, referred this matter to me for analysis and a recommended disposition.  [Doc. 2].  I held oral argument on the Motion on November 22, 2019.  [Doc. 12] (clerk's minutes).  I have considered the briefing, the relevant portions of the records in both the civil and criminal cases, the oral argument, and the relevant law.  Being otherwise fully advised in the premises, I recommend that the Motion be DENIED.

---

[1] Unless otherwise indicated, citations refer to documents in the civil case, not the underlying criminal case.

## BACKGROUND AND PROCEDURAL HISTORY

A jury convicted Movant of conspiracy to possess with the intent to distribute five kilograms and more of cocaine.  [Doc. 7-1] at 2060.  Although he admitted that he attempted to buy the cocaine, his defense at trial was that he did so under duress from a Mexican drug cartel. Movant testified that he spoke with a man named Lazaro Mendoza-Dominguez ("Lazaro") on May 9, 2014, about buying Lazaro's house.  *Id.* at 1391–93.  According to Movant, Lazaro offered to sell the house to him.  *Id.*  But when he spoke with Lazaro again on September 29, 2014, Lazaro changed the conversation: After confirming that Movant had the money, he told Movant that members of a Mexican drug cartel would contact him and that if he did not do what they said, they would kidnap and torture his daughter, who lived in Mexico at the time.  *Id.* at 231, 1399–400. Lazaro told him that the cartel would ask him to buy drugs.  *See id.* at 1401–02.  Lazaro instructed him to purchase the drugs and then put them in Lazaro's garage in Santa Fe, New Mexico.  *See id.* Movant then began looking for drugs to buy.  *See id.* at 810.

Homeland Security Investigations ("HSI"), an investigative arm of the Department of Homeland Security's U.S. Immigration and Customs Enforcement, learned that a man named "Leche" wanted to buy six kilograms of cocaine.  *Id.* at 802.  The agents later learned that "Leche" was, in fact, Movant.  *Id.* at 976.  Undercover HSI agents arranged a reverse-sting operation in Albuquerque in which undercover agents would sell Movant six kilograms of cocaine for $150,000.  *See id.* at 1056–57.

Movant testified that he attempted to call his friend, Ervey, "seeking some form of support and help with this" situation.  *Id.* at 1441; *see id.* at 1440.  When he called, however, Ervey's brother, co-defendant Giovanni Montijo-Dominguez, answered the phone.  *Id.* at 1440.  Movant

2

testified that he asked Montijo-Dominguez to go with him to Albuquerque because he "had a really serious problem." *Id.* at 1441. He explained that the cartel had instructed him to bring them his life savings. *Id.* at 1445. Montijo-Dominguez agreed to accompany him. *Id.* at 1441.

On October 7, 2014, Montijo-Dominguez drove Movant to the location of the reverse-string operation: a Walmart parking lot. *Id.* at 305, 1440–41. Upon meeting the undercover agents, however, Movant and Montijo-Dominguez asked if they could complete the transaction elsewhere. *Id.* at 952–54. They expressed concern over the number of police and cameras in the area. *Id.* Movant suggested that they rent a hotel room to complete the transaction. *Id.* at 954. Movant also told the agents that he had a house in Santa Fe, "[s]o that [the sellers] know for next time if [they] wish." *Id.* at 1005–05. The parties decided to stay in the parking lot, and Movant and Montijo-Dominguez handed the agents money. *Id.* at 310–11. Additional agents then drove to the scene in a van purportedly containing the cocaine. *Id.* at 312. Movant entered the van and obtained a package that he believed contained cocaine. *See id.* The undercover agents then "called the takedown signal" and arrested Movant. *Id.* at 313. Though Montijo-Dominguez attempted to escape, the government apprehended him as well. *Id.* at 480, 482–83, 1181–82.

The United States charged Movant and Montijo-Dominguez with conspiracy to possess with the intent to distribute five kilograms and more of cocaine, a violation of 21 U.S.C. § 846. *See id.* at 216; [CR Doc. 80] at 1. Judge Herrera was the trial judge. She instructed the jury on the conspiracy charge as follows:

> To find the defendants guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:
> *First*: two or more persons agreed to possess a controlled substance for distribution;
> *Second*: the defendants knew the essential objective of the conspiracy;

*Third*: the defendants knowingly and voluntarily involved themselves in the conspiracy;

*Fourth*: there was interdependence among the members of the conspiracy; and

*Fifth*: the overall scope of the conspiracy involved at least five kilograms of cocaine.

Cocaine is a controlled substance within the meaning of the law.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member. The evidence may show that some of the persons involved in the alleged conspiracy are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

[Doc. 1-3] at 1. This instruction is materially identical to the Tenth Circuit Criminal Pattern Jury Instruction in effect at the time of the trial. *See* 10th Cir. Crim. Pattern Jury Instr. § 2.87 (2017).

During deliberations, the jury sent a note asking the Court to clarify this instruction. The note read, "Dear Judge, page 6 of instructions—2 or more persons agreed to possess . . . who can be those 2 people—agents, defendants, etc.?" [Doc. 1-4] at 1. Judge Herrera asked the attorneys for their thoughts on how to respond. After consulting with co-defendant's counsel, Movant's counsel, Ray Twohig, stated that "the instruction stands on its own. There's no reason to supplement it with an additional answer. I can see the confusion, especially when it comes to the agents. But nonetheless, I submit that the instruction is complete." [Doc. 1-5] at 1–2. The prosecutor told the Court that "the two people can be anyone," including agents. *Id.* at 2. He was mistaken. The Tenth Circuit has unequivocally held that there can be no indictable conspiracy involving only the defendant and government agents or informers. *United States v. Barboa*, 777 F.2d 1420, 1422 (10th Cir. 1985).

After a brief discussion with counsel, the Court said, "As I recall, this is a pattern instruction, a Tenth Circuit pattern instruction. So I'm inclined, then, to just stick with the circuit's

4

instruction." *Id.* at 5. The Court therefore responded to the jury by writing, "You must rely on the [C]ourt's instruction as written." [Doc. 1-6] at 1. Twohig and Montijo-Dominguez's counsel consented to this response. *See* [Doc. 1-5] at 4–5.

The jury convicted Movant and Montijo-Dominguez of conspiracy to possess cocaine with the intent to distribute. *See* [Doc. 7-1] at 2059–60. Movant appealed his conviction to the Tenth Circuit Court of Appeals. On appeal, he argued, *inter alia*, that the Court's response to the note inadequately described the law of conspiracy and failed to correct the jury's apparent confusion over who can comprise a conspiracy. *United States v. Montijo-Dominguez*, 771 F. App'x 870, 874 (10th Cir. 2019). The Tenth Circuit rejected this argument, finding that Twohig had invited this error by acquiescing to the Court's response. *Id.* Movant also argued that the government had adduced insufficient evidence to prove that he intended to distribute the cocaine, as opposed to merely possess it. *Id.* The Tenth Circuit rejected this argument, holding that "there is enough evidence to support a common goal of distributing the six kilograms of cocaine." *Id.* at 875. The Tenth Circuit affirmed Movant's[2] conviction. *Id.* at 871. Movant filed his Motion to Vacate on July 8, 2019. [Doc. 1].

## LEGAL STANDARD

A district court may grant relief under § 2255 if it determines "that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b) (2018). The movant in a § 2255 case bears

---

[2] Monitjo-Dominguez simultaneously appealed on substantially similar grounds. *Montijo-Dominguez*, 771 F. App'x 870. The Tenth Circuit rejected his appeal as well. *Id.*

the burden of establishing a claim for ineffective assistance of counsel. *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000).

## ANALYSIS

Movant requests habeas relief based on ineffective assistance of counsel. He argues that Twohig's failure to request a supplemental jury instruction informing the jury that it could not convict him based solely on a conspiracy with a government agent amounted to ineffective assistance of counsel. [Doc. 1] at 3–9. He also contends that Twohig provided ineffective assistance when he failed to argue to the jury that the government had not proven that Movant intended to distribute the cocaine. *Id.* at 10–12. For the following reasons, I recommend finding that neither argument is meritorious.

The Sixth Amendment guarantees the right to effective assistance of counsel. *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir. 1980). In order to prevail on a claim for ineffective assistance of counsel, Movant must satisfy two elements. First, he must show that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness," as judged under prevailing professional norms. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689; *see id.* ("Because of the difficulties inherent in making [this] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."). Movant must show that his counsel's performance was "completely unreasonable, not merely wrong." *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (quoting *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999)).

6

Second, Movant must show that his counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. Prejudice requires that the movant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**A.    Twohig's failure to request a supplemental jury instruction did not fall below an objective standard of reasonableness, and Movant has not shown that he was prejudiced by Twohig's conduct.**

Movant argues that Twohig rendered ineffective assistance of counsel by failing to inform the Court of the applicable law regarding conspiracy with government agents and by failing to ask the Court to advise the jury that a defendant cannot be convicted of conspiracy with a government agent. [Doc. 1] at 9. As noted above, however, the jury instruction given by Judge Herrera was materially identical to the relevant Tenth Circuit Criminal Pattern Jury Instruction. *Compare* [Doc. 1-3], *with* 10th Cir. Crim. Pattern Jury Instr. § 2.87. Both instructions state that the government must prove beyond a reasonable doubt that "two or more persons agreed" to possess a controlled substance for distribution, without mentioning government agents. [Doc. 1-3] at 1; *see* 10th Cir. Crim. Pattern Jury Instr. § 2.87. When the Court asked for his input, Twohig stated that "there's no reason to supplement [the pattern instruction] with an additional answer." [Doc. 1-5] at 1. Movant believes that the jury did not understand whether it could convict him based solely upon a conspiracy with Lazaro, who Movant suggests could have been a government agent. *See* [Doc. 1] at 6–8.

Counsel's failure to ask for a supplemental instruction does not fall below an objective standard of reasonableness when the instruction given to the jury accurately reflects the law. *See*

*United States v. Cooper*, 594 F. App'x 509, 514 (10th Cir. 2014); *Battle v. Workman*, 353 F. App'x 105, 110 (10th Cir. 2009) (holding that counsel did not act ineffectively by failing to object to a jury instruction because the "challenged jury instruction was correct at the time it was given"); *United States v. Hopkins*, Nos. 12-CR-0044, 14-CV-0596-CVE-FHM, 2015 WL 3772622, at *13 (N.D. Okla. June 17, 2015) ("The Court's instruction on the burden of proof and reasonable doubt was a recitation of the Tenth Circuit's pattern instruction. Thus, [counsel] could not have been deficient under *Strickland* by not objecting to this instruction." (citations omitted)); *United States v. Brooks*, No. 08-CR-61-TCK, 2013 WL 2896863, at *5 (N.D. Okla. June 12, 2013) ("[N]o deficient performance or prejudice occurred based on [counsel]'s failure to appeal the § 924(c) jury instructions because the instructions complied with Tenth Circuit law." (citing 10th Cir. Crim. Pattern Jury Instr. § 2.45)); *Pinon-Ayon v. United States*, No. 12-CV-17-ABJ, 2013 WL 1497904, at *4 (D. Wyo. Apr. 11, 2013) ("[T]he [C]ourt's instruction about [the defendant's] testimony is a model instruction, and the Court does not believe prevailing professional norms required defense counsel to object to it."). When faced with juror confusion, it is not objectively unreasonable to rely on a pattern jury instruction—an instruction which, by definition, reflects the professional norms in this circuit when defining the elements of conspiracy. *See* 10th Cir. Crim. Pattern Jury Instr. Introductory Note.

Here, the pattern jury instruction did not misstate the law. Movant conceded as much during oral argument. Recording of Oral Argument, November 22, 2019, Liberty—Picacho Courtroom, at 27:50–28:15; *see* [Doc. 8] at 5. The instruction did not, for example, omit the beyond-a-reasonable-doubt standard or an element of the offense. *See United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016); *United States v. Duran*, 133 F.3d 1324 (10th Cir. 1998). It is true

that the instruction did not expressly define the word "persons" or mention government agents. And while other defense attorneys may have attempted to add more detail to this two-page instruction, Twohig's failure to do so does not fall below an objective standard of reasonableness. Providing Twohig's representation with the appropriate level of deference, *see Strickland*, 466 U.S. at 688, I recommend finding that Movant has not established that Twohig's performance was constitutionally deficient.

However, even if Twohig's conduct was objectively unreasonable, Movant would still fail to establish that Twohig's performance prejudiced him. Even if the Court had informed the jury that it could not find a defendant guilty for conspiring only with government agents, *Movant points to no evidence on the record suggesting that Lazaro was a government agent*. Absent evidence that Lazaro was a government agent, it is pure speculation to suggest that a jury could have acquitted Movant on that basis.[3] Movant cannot meet his burden to show prejudice by relying on such speculation. *See Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("[M]ere speculation is not sufficient to satisfy this burden.").

Moreover, even if Lazaro was a government agent and Movant did conspire with him, Movant does not dispute that the government introduced evidence proving that Movant *also* conspired with Montijo-Dominguez. *See* [Doc. 8] at 5. Montijo-Dominguez testified that he never

---

[3] Movant repeatedly cites statements by the Court expressing confusion over the exact role Lazaro had in the conspiracy. *See* [Doc. 1] at 6 (noting the Court stated this "[was] a very odd case in some respects" (quoting [Doc. 1-7] at 11)); *id.* (noting the Court speculated that "maybe [Movant's daughter] was never in danger because Lazaro was working up a deal with the government" (quoting [Doc. 1-7] at 11)). Movant argues that if the Court was confused over his role, then the jury would not have understood Lazaro's role in the conspiracy as well. [Doc. 8] at 6. Such a conclusion does not logically follow from the Court's speculation. Moreover, the Court's statements are not evidence, and it never made the statements in the presence of the jury. Therefore, Movant cannot rely on these statements to show prejudice.

communicated with Lazaro about the transaction in question, *see* [Doc. 7-1] at 1764, 1783, and he had no conversation with any agent prior to the meeting at the Walmart parking lot,[4] *see id.* at 1764. By convicting Montijo-Dominguez of conspiracy, the jury necessarily found that he conspired with the only other person he spoke with about the transaction: Movant. Because the jury found that Movant and Montijo-Dominguez conspired with each other, the evidence supported a guilty verdict for each defendant based on *that* conspiracy—irrespective of any alleged conspiracy between Movant and Lazaro. Therefore, even if Tenth Circuit law would not allow the jury to base its guilty verdict on a conspiracy between Movant and Lazaro, sufficient evidence existed to convict Movant based on his conspiracy with Montijo-Dominguez.

Movant argues that if the jury "necessarily found that [the] defendants conspired with each other," then "the jury's note [would] make[] no sense." [Doc. 8] at 5. I disagree. If the jury intended to base its verdict on a conspiracy between Movant and Montijo-Dominguez, its note would make perfect sense. The note can be read as asking whether a conspiracy could exist (1) between a defendant and an agent, or *(2) between two defendants. See* [Doc. 1-4] at 1. Movant has not shown a reasonable probability that if Twohig had asked the Court to instruct the jury that it could not find him guilty based on a conspiracy with Lazaro, the outcome would have been different.

Because Movant fails to establish that Twohig's performance was deficient or that he suffered prejudice from his performance, I recommend denying Movant's claim for ineffective assistance of counsel related to the jury instruction.

---

[4] Additionally, the United States characterized Montijo-Dominguez's conversations with the agents at the parking lot as "brief and superficial," [Doc. 7] at 10, and Movant does not challenge that characterization.

**B.  Movant cannot show that he suffered prejudice from Twohig's failure to argue to the jury that he lacked an intent to distribute the cocaine because the Tenth Circuit has already held that sufficient evidence existed on the record to make such a finding, and Movant omits from his briefs overwhelming evidence suggesting that he intended to distribute the cocaine.**

Movant contends that Twohig provided ineffective assistance because he failed to argue that the government had not proven that Movant had an intent to distribute the cocaine.  [Doc. 1] at 10.  Movant believes that "[t]here was no evidence that [he] had an agreement with any individual to distribute cocaine; [the evidence] merely showed that Lazaro instructed [him] to place the cocaine he purchased in Lazaro's garage."  *Id.*  According to Movant, if Twohig had emphasized the government's burden and "pointed out the lack of evidence of any . . . shared intent to distribute," a reasonable probability would have existed that the jury would have acquitted Movant.  *Id.*

I recommend rejecting this argument because Movant cannot show he was prejudiced by Twohig's representation.  As noted previously, Movant argued on appeal that there was insufficient evidence to establish an intent to distribute cocaine.  The Tenth Circuit disagreed: "Contrary to Mr. Mendoza and Mr. Montijo's assertions, there is enough evidence to support a common goal of distributing the six kilograms of cocaine."  *Montijo-Dominguez*, 771 F. App'x at 875.

In fact, the record reveals overwhelming evidence of Movant's intent to distribute cocaine. *See Turrentine v. Mullin*, 390 F.3d 1181, 1208–09 (10th Cir. 2004).  First, the evidence established that Movant intended to transfer six kilograms of cocaine to Lazaro—a quantity strongly suggesting that Lazaro would sell the cocaine to others.  *See United States v. McIntyre*, 997 F.2d 687, 708 (10th Cir. 1993).  Second, when speaking with the agents in the Walmart parking lot,

Movant mentioned a "next time," [Doc. 7-1] at 1005, implying that the conspiracy would continue into the future.

Third, both Movant and Montijo-Dominguez expressed their desire not to complete the transaction in the Walmart parking lot. One agent testified that, once the agents arrived in the parking lot, "immediately [the defendants] made us aware that they didn't want to be in that specific parking lot area, and they were asking if we could move to another location." *Id.* at 952. "They said that the . . . location was known to be full of cops, there was a lot of cameras." *Id.* Movant expressed "his worries [about] the location" and "suggested . . . to rent a hotel to go conduct the transaction." *Id.* at 954. Another agent testified that, because Movant knew "of the possibility of law enforcement being in the area and the cameras that were located at Walmart, [he] had . . . experience doing this [type of transaction] before," making his actions consistent with one who regularly distributes drugs. *Id.* at 1157. Fourth, the evidence established that Movant intended to transfer the drugs to Lazaro—a person who was not a party to the failed parking lot transaction. *See id.* at 1402. Finally, as noted by Movant, he intended to deliver the cocaine to the garage of a person seemingly associated with the cartel. *See* [Doc. 7-1] at 1401–02. Even if each item of circumstantial evidence, taken in isolation, does not establish Movant's intent to distribute, based on the totality of the circumstances, overwhelming evidence exists to prove such an intent beyond a reasonable doubt. *See United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986).

Crucially, even though the Tenth Circuit and the United States relied on the above evidence to find or argue, respectively, that sufficient evidence of an intent to distribute existed, Movant mentions this evidence in neither his Motion nor his Reply. Movant cannot assert that insufficient evidence to support his conviction existed while simultaneously ignoring the plethora of evidence

supporting his conviction.  By solely focusing on his intent to deliver the cocaine to Lazaro's garage, he simply cherry-picks the part of the record allegedly supporting his argument.  This strategy does not meet his burden to demonstrate prejudice.[5]

Movant makes two meritless arguments to rebut the evidence cited by the Tenth Circuit and the United States.  First, he claims that the Court previously expressed skepticism that he engaged in drug trafficking.  [Doc. 8] at 7.  Yet, the Court's skepticism is not evidence and, without more, does not show prejudice.

Second, Movant argues that "an agreement between two people that one will transfer drugs to the other can't form the basis of a conspiracy to distribute."  [Doc. 1] at 11 (quoting *United States v. Bowline*, 674 F. App'x 781, 782 (10th Cir. 2016)).  Because, according to Movant, the evidence simply established that he intended to transfer drugs to Lazaro, he had no intent to distribute.  *Id.*  Yet, as the government contends, *Bowline* involved the "buyer-seller rule," which provides that simple drug sales where one person sells drugs to another do not establish an intent to distribute; though each person intended that the drugs would be transferred, the sale included the end user of the drugs who did not intend to move the drugs to other persons.  *See Bowline*, 674 F. App'x at 782, 784–85; *see also United States v. Ritz*, 125 F.3d 864, 1997 WL 602681, at *1 n.1 (10th Cir. Sept. 30, 1997).  Such a rule does not apply where, like here, the defendant is not the end user of the drugs and other evidence shows that the defendant intended to distribute the drugs to other persons not in the transaction at issue.  *See Ritz*, 1997 WL 602681, at *1 n.1; *see also*

---

[5] Additionally, Movant suggests that insufficient evidence existed to demonstrate that Montijo-Dominguez had an intent to distribute drugs.  *See* [Doc. 1] at 10.  He fails to explain why Montijo-Dominguez lacked this intent, and, even if he did explain why, I would recommend finding that the evidence was sufficient to find that Monitjo-Dominguez had this intent for the same reasons listed above.

*United States v. Gallegos*, 784 F.3d 1356, 1360 (10th Cir. 2015). The Tenth Circuit has already informed Movant that the buyer-seller rule does not apply here, *Montijo-Dominguez*, 771 F. App'x at 875, and I agree.

Finally, Movant believes that had Twohig notified the jury of "the government's burden to prove . . . that [Movant] had an agreement with another individual to distribute cocaine," then a reasonable probability would have existed that the jury would not have convicted him. [Doc. 8] at 6. Because the jury instructions stated that the government had the burden to prove each element of the offense beyond a reasonable doubt, Movant suffered no prejudice from Twohig's alleged failure to emphasize the government's burden. *See* [Doc. 7-1] at 1936–37; [Doc. 1-3] at 1.

**C.      No evidentiary hearing is needed because the existing record conclusively shows that Movant is entitled to no relief.**

"A petitioner for habeas relief is entitled to an evidentiary hearing on a § 2255 motion '[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief.'" *United States v. Gallegos*, 459 F. App'x 714, 716 (10th Cir. 2012) (quoting 28 U.S.C. § 2255(b) (2012)). "A § 2255 petitioner is entitled to an evidentiary hearing when there is a disputed factual issue." *Id.* at 716–17. Yet, when the evidence permits the court to resolve the § 2255 motion on the existing record, the movant is not entitled to an evidentiary hearing. *United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996). The movant has the burden of establishing the necessity of an evidentiary hearing. *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

Movant is not entitled to an evidentiary hearing in this case because no relevant factual dispute exists, and because the existing record conclusively shows that he is entitled to no relief.

As noted earlier, it is apparent based on the use of the pattern jury instruction that Twohig did not act ineffectively by failing to request a supplemental instruction. Such evidence allows the Court to resolve the Motion. Moreover, as explained above, the existing record permits me to determine that Movant has failed to show that Twohig's representation prejudiced him. Movant identifies in his briefing no relevant factual dispute that would require an evidentiary hearing. Therefore, Movant fails to meet his burden to establish the necessity of an evidentiary hearing.

## CONCLUSION

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence and Motion for an Evidentiary Hearing [Doc. 1] be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**