**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LUIS MENDOZA-ALARCON,

    Movant/Defendant,

v.

UNITED STATES OF AMERICA,

    Respondent.

No. Civ. 1:19-cv-0613 JCH/SMV
No. Cr. 1:14-cr-3758 JCH

**ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION AND DENYING MOVANT'S MOTION TO VACATE**

This matter comes before the Court on Movant's Objections to the magistrate judge's Proposed Findings and Recommended Disposition ("PFRD") to Deny his Motion to Vacate Under 28 U.S.C. § 2255. (ECF No. 14).[1] The Objections have been fully briefed. The Court, having considered the Objections, the PFRD, the evidence, and the relevant law, concludes that the Objections should be overruled, the PFRD should be adopted, and Movant's Motion to Vacate should be denied.

**I.   BACKGROUND**

                    **A.   Factual Background**

Movant collaterally attacks his conviction for conspiracy to possess with intent to distribute five kilograms and more of cocaine. Movant had unsuccessfully argued at trial that he attempted to buy the cocaine under duress from a Mexican drug cartel. *See* (ECF No. 7-1) at 1994. According to Movant, he had discussed buying a house from Lazaro Mendoza-Dominguez ("Lazaro") on May 9, 2014, but then on September 29, 2014—after confirming that Movant had

---

[1] All citations refer to documents filed in the civil case, not the underlying criminal case.

the money to purchase the house—Lazaro abruptly told him that members of a Mexican drug cartel would contact him.[2] *See id.* at 1391–93, 1399–400. Lazaro stated that the cartel would ask him to buy drugs, and that if he did not do as they wished, the cartel would kidnap and torture his daughter who lived in Mexico. *Id.* at 231, 1399–400. Lazaro instructed Movant to purchase the drugs and put them in Lazaro's garage. *Id.* at 1401–02.[3]

The Department of Homeland Security later discovered that Movant was interested in buying six kilograms of cocaine. *See id.* at 802. Undercover agents then arranged a reverse-sting operation where the agents would sell Movant six kilograms of cocaine for $150,000 in Albuquerque. *See id.* at 1056–57.

Movant attempted to call his friend, Ervey, for "some form of support and help" with his situation, but Ervey's brother, co-defendant Giovanni Montijo-Dominguez, answered the phone instead. *Id.* at 1440–41. Movant asked Montijo-Dominguez to accompany him to Albuquerque because he "had a really serious problem," *id.* at 1441, stating that the cartel had instructed him to bring his life savings, *id.* at 1445. Montijo-Dominguez agreed to go with Movant to this meeting. *Id.* at 1440–42.

On October 7, 2014, Montijo-Dominguez drove Movant to a Walmart parking lot, the location of the reverse-string operation. *Id.* at 305, 1440–42. Once they met the undercover agents, Movant and Montijo-Dominguez suggested that they complete the transaction elsewhere.

---

[2] This sequence of events could suggest that Lazaro used the potential sale of the house as a method to determine if Movant had sufficient money to buy drugs.
[3] Movant objects to the magistrate judge's finding that, at this point, "Movant then began looking for drugs to buy." (ECF No. 14) at 1–2. He claims that the magistrate judge relied on trial evidence that was not offered for its truth. *Id.* at 1. The Court overrules this objection. The magistrate judge never relied on this statement to find that Movant intended to possess and distribute cocaine, *see* (ECF No. 13) at 11–14, and neither will the Court.

*Id.* at 952–54. They noted the police and cameras nearby. *See id.* Movant explained that he had a house in Santa Fe, "[s]o that [the sellers] know for next time if [they] wish." *Id.* at 1005. Nonetheless, the transaction occurred in the parking lot. Montijo-Dominguez gave the agents the money. *Id.* at 310–11. Movant received a package that he believed contained cocaine. *See id.* at 312. The agents then arrested Movant and Montijo-Dominguez. *See id.* at 313, 484–85.

### B. Procedural History

The government charged Movant and Montijo-Dominguez with conspiracy to possess with the intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 846. *See id.* at 216. The undersigned conducted the trial and sentencing. The Court instructed the jurors on the conspiracy charge using the Tenth Circuit pattern jury instruction. *Compare* (ECF No. 1-3) at 1, *with* 10th Cir. Crim. Pattern jury Inst. § 2.87 (2017). The pattern jury instruction did not expressly say that the jury could not convict Movant based on a conspiracy with only a government agent.

During jury deliberations, the jury sent a note to the Court asking for clarification of this instruction. It asked, "Dear Judge, page 6 of instructions—2 or more persons agreed to possess . . . who can be those 2 people—agents, defendants, etc.?" (ECF No. 1-4) at 1. The Court consulted counsel on the appropriate response to the note. Movant's counsel, Ray Twohig, stated, "[T]he instruction stands on its own. There's no reason to supplement it with an additional answer. I can see the confusion, especially when it comes to the agents. But nonetheless, I submit that the instruction is complete." (ECF No. 1-5) at 1–2. Counsel for the United States incorrectly informed the Court that the jury could convict a defendant for conspiring only with a government agent. *Id.* at 2. The Tenth Circuit has held the opposite. *See United States v. Barboa*, 777 F.2d 1420, 1422

(10th Cir. 1985). The Court, noting that this was a pattern jury instruction, "[was] inclined, then, to just stick with the circuit's instruction." (ECF No. 1-5) at 5. Counsel agreed that the Court should respond to the note by writing, "[The jury] must rely on the Court's instruction as written." *Id.* at 5–6. The Court gave this response to the jury. (ECF No. 1-6) at 1.

The jury convicted Movant and Montijo-Dominguez of conspiring to possess five kilograms and more of cocaine with the intent to distribute. *See* (ECF No. 7-1) at 2059–60. Movant appealed, arguing that (1) the Court failed to properly instruct the jury that it could not convict a person for conspiring only with government agents, and (2) the government failed to proffer sufficient evidence showing that he intended to distribute, not simply possess, cocaine. *United States v. Montijo-Dominguez*, 771 F. App'x 870, 874–76 (10th Cir. 2019). The Tenth Circuit affirmed. It found that Twohig had invited any alleged error related to the jury instruction by agreeing to the Court's response to the note. *Id.* It also held that "there is enough evidence to support a common goal of distributing the six kilograms of cocaine." *Id.* at 875.

Movant filed his Motion to Vacate on July 8, 2019. (ECF No. 1). First, he argues that Twohig provided ineffective assistance of counsel by failing to request a supplemental jury instruction stating that the jury could not convict him based solely on a conspiracy with an agent. *Id.* at 5–9. He contends that "there is at least a reasonable probability that the jury convicted [him] based on its conclusion that Lazaro was acting on behalf of the government and that [Movant] engaged in a narcotics conspiracy with him." *Id.* at 8. Second, he argues that Twohig provided ineffective assistance by failing to argue that the record did not support a finding that he intended to distribute the cocaine. *Id.* at 10–12. Movant also requests an evidentiary hearing. *Id.* at 12.

4

### C. The Magistrate Judge's PFRD

The Magistrate Judge recommended that the Court deny the Motion to Vacate. As to Movant's first argument, he determined that it was not objectively unreasonably to rely on a pattern jury instruction when faced with juror confusion. (ECF No. 13) at 7–9. The magistrate judge also found that Movant failed to show that he suffered prejudice from Twohig's failure to request a supplemental instruction because (1) "*Movant points to no evidence on the record suggesting that Lazaro was a government agent*," *id.* at 9, and (2) the record showed that Movant conspired with Montijo-Dominguez, who was not a government agent, *id.* at 9–10. The magistrate judge then found that Movant could not show that Twohig's failure to argue that he lacked the intent to distribute cocaine prejudiced him because the record contained overwhelming evidence suggesting that he possessed such intent. *Id.* at 11–14. Finally, the magistrate judge recommended that the Court decline to hold an evidentiary hearing. *Id.* at 14–15.

Movant objected to the PFRD on December 10, 2019. (ECF No. 14). The United States responded to the Objections on December 17, 2019. (ECF No. 15). Movant filed a Supplement to his Objections on January 6, 2020. (ECF No. 16).

## II. STANDARD

Federal Rule of Civil Procedure 72(b) governs objections to a magistrate judge's PFRD on a dispositive issue. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Under the firm waiver rule, "theories raised for the

5

first time in objections to the magistrate judge's [PFRD] are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

## III. ANALYSIS

The Sixth Amendment guarantees the right to effective assistance of counsel for criminal defendants. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). To prevail on a claim of ineffective assistance of counsel, the movant must establish two elements. First, the movant must show that his counsel performed deficiently. *Id.* at 687. Counsel performs deficiently when his representation falls "below an objective standard of reasonableness." *Id.* at 688. Counsel's performance must have been completely unreasonable, not merely wrong. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997). Second, the movant must show that he suffered prejudice from the deficient performance. *Strickland*, 466 U.S. at 694. To prevail on this element of the *Strickland* test, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Petitioner levies 13 objections against the magistrate judge's PFRD. (ECF No. 14) at 1–15. The Court will group them into five categories. First, Movant objects to the magistrate judge's finding that Twohig did not perform deficiently by failing to request a supplement to a pattern jury instruction. *Id.* at 2–4. Second, he objects to the magistrate judge's finding that he did not suffer prejudice from Twohig's performance because the record evidence did not support a finding that Lazaro was a government agent. *Id.* at 4–7. Third, Movant objects to the magistrate judge's finding that he suffered no prejudice because even if Lazaro had been an agent, Movant conspired with Montijo-Dominguez, who was not. *Id.* at 8–13. Fourth, he objects to the magistrate judge's

6

finding that he suffered no prejudice from Twohig's failure to properly argue that he lacked the intent to distribute cocaine. *Id.* at 13–15. Finally, Movant objects to the recommendation that this Court refrain from holding an evidentiary hearing. *Id.* at 15. The Court overrules each objection.

**A.   Movant fails to demonstrate that Twohig performed objectively unreasonably by focusing on a duress defense and relying on a pattern jury instruction when faced with juror confusion.**

The magistrate judge found that Twohig did not perform deficiently because he relied on a pattern jury instruction in the face of juror confusion. (ECF No. 13) at 8. Movant argues that the magistrate judge erred because he did not determine "whether counsel's actions resulted from ignorance and neglect or strategy." (ECF No. 14) at 3. Movant contends that by failing to inform the Court that the jury could not convict his client of conspiring with an agent, Twohig "failed to acquire a basic conception of the elements of the crime." *Id.*

Yet, "an attorney's unawareness of relevant law at the time he made the challenged decision does not, in and of itself, render the attorney's performance constitutionally deficient." *Bullock v. Carver*, 297 F.3d 1036, 1048 (10th Cir. 2002). Even when an attorney is mistaken about the law, it "will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." *Id.* (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986)). "Certainly, an attorney's ignorance [of the law] will affect a court's . . . analysis." *Id.* at 1049. "An attorney's demonstrated ignorance of law . . . will eliminate *Strickland*'s presumption that the decision was objectively reasonable because it might have been made for strategic purposes." *Id.* "[H]owever, the pertinent

7

question . . . remains whether, after considering all the circumstances of the case, the attorney's representation was objectively unreasonable." *Id.* at 1050–51.

Movant has not shown that the circumstances of this case demonstrate that Twohig acted objectively unreasonably. When defining the charged offense, the trial court used the relevant pattern jury instruction. *See* (ECF No. 13) at 7. Movant admits that this instruction correctly stated the law. (ECF No. 8) at 5. Movant identifies no case holding that the failure to object to the use of a correct pattern jury instruction constitutes ineffective assistance of counsel, and the Tenth Circuit and district courts within this circuit routinely hold otherwise. *See United States v. Coo*per, 594 F. App'x 509, 514 (10th Cir. 2014); *Battle v. Workman*, 353 F. App'x 105, 110 (10th Cir. 2009); *United States v. Hopkins*, Nos. 12-CR-0044, 14-CV-0596-CVE-FHM, 2015 WL 3772622, at *13 (N.D. Okla. June 17, 2015) ("The Court's instruction . . . was a recitation of the Tenth Circuit's pattern instruction. Thus, [counsel] could not have been deficient under *Strickland* by not objecting to this instruction." (citations omitted)); *United States v. Brooks*, No. 08-CR-61-TCK, 2013 WL 2896863, at *5 (N.D. Okla. June 12, 2013); *Pinon-Ayon v. United States*, No. 12-CV-17-ABJ, 2013 WL 1497904, at *4 (D. Wyo. Apr. 11, 2013).

Twohig did not perform objectively unreasonably by telling the court that "there's no reason to supplement [the pattern instruction] with an additional answer." (ECF No. 1-5) at 1. The Tenth Circuit developed pattern jury instructions to succinctly and correctly define the elements of an offense. That the jury here expressed confusion over the pattern jury instruction may have prompted other attorneys to clarify the issue—but Twohig's failure to do so does not fall below a standard of objective reasonableness.

8

Movant argues that Twohig declined to request the jury instruction not for strategic reasons but because he was ignorant of the law of conspiracy. (ECF No. 16) at 1–2. Movant proffers an affidavit from Twohig, who swears that he failed to request a supplemental jury instruction because he forgot about relevant precedent holding that a court cannot convict a defendant for conspiring solely with a government agent. (ECF No. 16-1) at 3–5. Twohig avers that this error constituted ineffective assistance of counsel. *Id.* at 4–5.

Movant waived consideration of this affidavit for two reasons. First, he failed to include it with the briefing before the magistrate judge. As he presented it for the first time when objecting to the PFRD, he has waived consideration of it. *See Garfinkle*, 261 F.3d at 1031. Second, he cites this affidavit for the first time in a Supplement to his Objections—filed after the government responded. The Court construes this filing as a reply, and Movant waived consideration of the affidavit by failing to raise it until his Reply. Additionally, the Court declines to consider this affidavit because Rule 72(b) does not contemplate replies in support of objections to a PFRD. *See Holick v. Burkhart*, No. 16-1188-JWB-KGG, 2018 WL 4052154, at *4 (D. Kan. Aug. 24, 2018); *Heuser v. Wood*, No. 99-cv-0884 JP/LFG, 2000 WL 36739825, at *7 (D.N.M. June 6, 2000).

Finally, even if the Court considered this affidavit, it would reject it. "The Supreme Court . . . has instructed [courts] not to look to defense counsel's subjective motivations when determining reasonableness, particularly when counsel only articulates his motivations long after the trial." *Littlejohn v. Trammell*, 704 F.3d 817, 872 n.2 (10th Cir. 2013) (Tymkovich, J., concurring in part). Federal courts routinely express "reservations about the reliability of such petitioner-friendly affidavits, often sworn and submitted long after trial, in which former counsel extends his zealous defense so far as to 'fall on his sword' and confess a *Strickland* violation that

9

would, if proven, benefit his former client." *Coleman v. Sisto*, No. 2:09-cv-0020 DAD, 2012 WL 6020095, at *26 (E.D. Cal. Dec. 3, 2012); *see Allen v. Mullin*, 368 F.3d 1220, 1240 (10th Cir. 2004) (holding that trial counsel's "about-face on the [deficiency of his performance] strongly suggests a willingness to 'fall on the sword' . . . The motive is transparent, if not misguided.").

Based on the totality of the circumstances, Twohig ably represented Movant throughout trial. He focused on a duress defense based on record evidence of threats to Movant's daughter. (ECF No. 7-1) at 1994. His ignorance of the law at one stage of the proceedings—coupled with his reliance on a pattern jury instruction when faced with juror confusion—does not establish that he acted deficiently. Even if the Court considered it, Twohig's eleventh-hour affidavit would not change these objective circumstances. The Court overrules Movant's objections to the magistrate judge's finding that he failed to establish that Twohig performed deficiently.

B. **Movant fails to establish that he suffered prejudice from Twohig's allegedly deficient performance because the record evidence does not support a finding that Lazaro was a government agent.**

The magistrate judge found that Movant suffered no prejudice from Twohig's performance because the jury had no basis to find that Lazaro was a government agent. (ECF No. 13) at 9. Movant objects on the grounds that the trial evidence allegedly showed otherwise. He relies on my statements at sentencing, including my statement that the evidence suggested that "Lazaro was working up a deal with the government." (ECF No. 14) at 6 (quoting (ECF No. 1-7) at 11). The Court rejects this argument for two reasons. First, my statements are not evidence that a jury could have relied upon to acquit Movant, and it occurred at sentencing, outside the presence of the jury. Second, Movant takes this quote out of context. The full quote reads, "And maybe [Movant's daughter] was never in danger because Lazaro was working up a deal with the government. I don't

know. I'm kind of engaging in Mr. Mysliwiec's either this, this, or that." (ECF No. 1-7) at 11. I immediately qualified the idea that Lazaro was working up a deal with the government by saying I did not know if that were true. I then further downplayed this statement by saying I was engaging in the prosecutor's "this, this, or that"—not relying on trial evidence.[4] *See id.*

Movant identifies one—and only one—piece of evidence allegedly suggesting that Lazaro was a government agent. According to him, "shortly before the occurrence of the events giving rise to this case," Lazaro pleaded guilty "to a minor charge of use of communication to further drug trafficking and sentenced to time served, the minimum possible sentence." (ECF No. 14) at 6. According to Movant, based on these facts, "[t]he jury could reasonably have concluded that Lazaro worked with the government to set up the drug deal involving Mendoza-Alarcon in order to obtain a favorable outcome in his own case." *Id.*

The Court declines to consider this argument. Though the United States argued in its Response to the Petition that no evidence at trial suggested that Lazaro was a government agent, (ECF No. 7) at 9, Movant failed to make this argument in the briefing before the magistrate judge, *see* (ECF No. 1) at 6–9; (ECF No. 8) at 6. Because Movant made this argument for the first time in his Objections, he has waived it. *See Garfinkle*, 261 F.3d at 1031.

---

[4] Movant also objects to the magistrate judge's finding that the Court's confusion over Lazaro's role in the conspiracy does not show prejudice. (ECF No. 14) at 7. According to Movant, I expressed confusion about how Lazaro became involved in the conspiracy. *Id.* If I was confused, the argument goes, then certainly the jury—with less experience in criminal trials than me—was confused over Lazaro's role in the conspiracy. *Id.* Movant relies on the same quote from me that I rejected above, and I overrule this objection for the same reasons  My alleged confusion is not evidence that a jury could have used to acquit Movant, and Movant took this quote out of context. Finally, even if I had been confused about "exactly how [Lazaro] played into this whole thing," *id.* at 8, such confusion about Lazaro's role does not necessarily mean that I—or the jury—believed that Lazaro was an *agent*.

Even if it were to consider this argument, the Court would not be persuaded. First, to the extent Movant suggests that Lazaro received the minimum sentence because he agreed to become an informant, such a conclusion does not logically follow from his sentence. Courts consider numerous factors when sentencing criminals, including many factors that relate in no way to becoming an informant—such as pleading guilty and admitting the truth of the charges. *See, e.g.*, United States Sentencing Commission, *Guidelines Manual* § 3E1.1 cmt.3 (Nov. 2016). Movant identifies no record evidence giving any indication about why Lazaro received the minimum sentence. Simply put, the mere fact that a person received a seemingly favorable sentence does not meaningfully suggest that he became an informant.[5] Anything more is speculation. Second, even if Lazaro decided to become an informant to lessen his sentence, Movant points to no record evidence that meaningfully suggests that he was an informant *for this drug transaction*.

Movant fails to identify evidence meaningfully suggesting that Lazaro was a government agent. Movant does not contest that the government proved that, if he had the intent to distribute cocaine, his interactions with Lazaro constituted a conspiracy. Thus, no reasonable probability exists that, but for Twohig's alleged error, the outcome of the trial would have been different.

**C.     Movant fails to establish that he suffered prejudice from Twohig's allegedly deficient performance because even if Lazaro was a government agent, the jury necessarily found that Movant conspired with non-agent Montijo-Dominguez.**

Movant objects to the magistrate judge's finding that he suffered no prejudice from Twohig's allegedly deficient performance because the record evidence supported a finding that

---

[5] And even if Movant somehow convinced the Court that Lazaro's prior sentence *could* suggest that he was an informant, the numerous logical leaps it would require to make such an inference and the lack of record evidence supporting this inference would not suffice to show that Twohig's performance prejudiced him.

Movant conspired with his co-defendant, Montijo-Dominguez. (ECF No. 14) at 8. He contends that "ample evidence [suggested] that [he] and Montijo-Dominguez did not conspire with each other" and that Montijo-Dominguez lacked the intent to distribute cocaine, including that he allegedly never told Montijo-Dominguez that the transaction involved cocaine. *Id.*

Movant waived this argument by failing to include it in the briefing before the magistrate judge. The government argued in its Response to the Petition that the jury "necessarily concluded in convicting Montijo that [Movant] and Montijo conspired, at a minimum, with each other." (ECF No. 7) at 12. Movant made only one argument regarding this theory in his Reply: If "that is true, the jury's note [would] make no sense" because if "the jury had concluded that Mendoza-Alarcon and his co-defendant conspired with each other to possess cocaine with intent to distribute, there would have been no reason for the note." (ECF No. 8) at 5. Though Movant stated in his Petition that insufficient evidence existed showing that Montijo-Dominguez intended to distribute cocaine, (ECF No. 1) at 10, the magistrate judge properly rejected that argument as conclusory because Movant "fail[ed] to explain why Montijo-Dominguez lacked this intent," (ECF No. 13) at 13 n.5. Movant's attempt to do so for the first time now waives the issue. *See Garfinkle*, 261 F.3d at 1031.

Moreover, the Court agrees with the magistrate judge that the jury necessarily found that Montijo-Dominguez conspired with Movant to distribute cocaine. Montijo-Dominguez never spoke with alleged agent Lazaro about this transaction. (ECF No. 7-1) at 1764, 1783. Additionally, though Montijo-Dominguez spoke with the agents at the scene about the transaction, until his Objections, Movant never challenged the United States' characterization of those

13

conversations as "brief and superficial."[6] (ECF No. 7) at 10. By process of elimination, the jury only could have convicted Montijo-Dominguez based on conspiring with the last remaining person involved in the transaction: Movant.

Finally, Movant objects to the magistrate judge's finding that if the jury intended to base its verdict on a conspiracy between the two co-defendants, then its note made sense. (ECF No. 14) at 12–13. He argues that because the Court had already instructed the jury that it could base its verdict on a conspiracy between co-defendants, the jury had no reason to ask whether it could convict Movant on this basis. *Id.* The Court overrules this objection. Though the instructions answered the jury's question, the jury nonetheless asked the Court whether two "defendants" could be the persons comprising the conspiracy. (ECF No. 1-4) at 1. If the jury did not intend to base its verdict on a conspiracy between two defendants, then the note would make no sense.

Because the jury necessarily found that the co-defendants conspired with each other, and neither defendant was a government agent, Movant suffered no prejudice from Twohig's failure to request a supplemental jury instruction.[7] As Twohig did not perform deficiently, and even if he did Movant suffered no prejudice from this performance, Movant fails to demonstrate that he received ineffective assistance of counsel.

---

[6] Though Movant attempts to refute this characterization in his Objections, *see* (ECF No. 14) at 10, by failing to do so until now, he has waived the issue, *see Garfinkle*, 261 F.3d at 1031.

[7] Movant objects to the magistrate judge's statement that "sufficient evidence" existed to convict him based on a conspiracy with Montijo-Dominguez, arguing that whether sufficient evidence existed to convict him improperly recites the standard for showing prejudice. (ECF No. 14) at 11. The Court overrules this objection because, regardless of how the magistrate judge phrased it, the jury necessarily found that Montijo-Dominguez conspired with Movant.

**D. Because overwhelming evidence at trial suggested that Movant intended to distribute the six kilograms of cocaine, he suffered no prejudice from Twohig's alleged failure to emphasize that he lacked such an intent.**

Movant contends that Twohig provided ineffective assistance of counsel by failing to argue to the jury that Movant lacked the intent to distribute cocaine. (ECF No. 1) at 10. The magistrate judge rejected this argument under the prejudice element of *Strickland*'s test. (ECF No. 13) at 11–14. Movant objects to the magistrate judge's finding that he suffered no prejudice because the record revealed "sufficient" evidence of such an intent. (ECF No. 14) at 13 (citing (ECF No. 13) at 11). Movant argues that whether "sufficient" evidence existed of this intent "is irrelevant to whether the twelve jurors in this case would have found a particular element to have been proved beyond a reasonable doubt." *Id.* Movant notes that I had previously indicated at sentencing that the facts did not suggest that he engaged in drug trafficking. *Id.*

The Court overrules this objection. First, Movant mischaracterizes the magistrate judge's findings. The magistrate judge not only noted that the Tenth Circuit has already found "sufficient evidence" of a common intent to distribute the cocaine; he found that the "record reveals *overwhelming* evidence of Movant's intent to distribute cocaine." (ECF No. 13) at 11 (emphasis added). He thus did not base his finding solely on the Tenth Circuit's decision explaining that "there is enough evidence to support a common goal of distributing the six kilograms of cocaine," *Montijo-Dominguez*, 771 F. App'x at 875.

Second, and more importantly, the Court agrees with the magistrate judge that overwhelming evidence exists showing that Movant intended to distribute the cocaine. *See Turrentine v. Mullin*, 390 F.3d 1181, 1208–09 (10th Cir. 2004) (finding that the petitioner in an ineffective-assistance-of-counsel claim suffered no prejudice from his counsel's performance

because the record showed "overwhelming evidence of his client's guilt"). The magistrate judge relied on numerous parts of the record to make this finding, and crucially, Movant addresses *none* of them. The magistrate judge has already noted that Movant's failure to address this evidence does not meet his burden to show prejudice, (ECF No. 13) at 12–13, and the Court agrees. This reason alone suffices to dispose of this objection, but the Court will nonetheless describe the overwhelming evidence showing that Movant had an intent to distribute.

Movant intended to transfer six kilograms of cocaine to the garage of Lazaro, a man seemingly associated with the cartel. Such a massive amount of cocaine, in conjunction with intending to bring it to a man associated with an organization known for distributing drugs, overwhelmingly supports a finding that Movant and Montijo-Dominguez intended to distribute the cocaine. *See United States v. McIntyre*, 997 F.2d 687, 694, 708 (10th Cir. 1993) (holding that the "large quantity of cocaine" found in a motel room—four bags totaling, according to a confidential informant, half a kilogram—supported a conviction for possession with intent to distribute); *United States v. Gay*, 774 F.2d 368, 372 (10th Cir. 1985) (holding that possession of 2.4 pounds—or roughly one kilogram—of cocaine strongly supported a conviction based on an intent to distribute). That Movant intended to pay $150,000 for the cocaine, (ECF No. 7-1) at 1057, 1242–43, only further shows that he did not intend to keep the cocaine for himself. *See Gay*, 774 F.2d at 372 ("[H]ere the evidence did not end with the quantity of the cocaine alone. Expert testimony at trial fixed the resale value of the cocaine at approximately $55,000 to $65,000.").

Furthermore, Movant does not contest testimony establishing that he and Montijo-Dominguez acted in accordance with those who regularly distribute drugs. When discussing the cocaine deal with the agents in the Walmart parking lot, Movant mentioned a "next

time," (ECF No. 7-1) at 1005, implying that he would continue to buy massive amounts of cocaine. One agent testified that Movant and Montijo-Dominguez "made [the agents] aware that they didn't want to be in that specific . . . area" because the "location was known to be full of cops." *Id.* at 952. Another agent testified that Movant and Montijo-Dominguez's knowledge of police surveillance patterns showed that they had "experience doing this [type of transaction] before," suggesting that they had bought drugs for distribution in the past. *Id.* at 1157. The magistrate judge correctly found that "[b]ased on the totality of the circumstances, overwhelming evidence exists to prove [an intent to distribute] beyond a reasonable doubt." (ECF No. 13) at 12.

Movant objects to this conclusion by, once again, citing to my statements at sentencing. He states that I was initially skeptical that he had engaged in drug trafficking. (ECF No. 14) at 14. As noted, my statements are not evidence and cannot support a finding of prejudice. After reviewing the evidence cited by the magistrate judge, the government, and the Tenth Circuit—which Movant repeatedly fails to contest—the Court finds that Movant fails to show a reasonable probability that if Twohig tried to contest Movant's intent to distribute the cocaine, the outcome of the trial would have been different. The Court overrules Movant's objections.

E.  **The Court will not hold an evidentiary hearing.**

The magistrate judge recommended that the Court decline to hold an evidentiary hearing because the existing record conclusively shows that Movant is entitled to no relief. (ECF No. 13) at 14–15. Movant objects to this recommendation on the ground that his allegations, if true, would entitle him to relief. (ECF No. 14) at 15. He also argues that a factual dispute exists "concerning whether counsel's actions resulted from lack of understanding of the applicable law or reasonable strategy." *Id.*

The Court overrules this objection and denies Movant's request for an evidentiary hearing. "In a § 2255 proceeding, the district court is not required to grant an evidentiary hearing on a prisoner's claims where 'the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Miller*, 20 F. App'x 800, 802 (10th Cir. 2001) (quoting 28 U.S.C. § 2255 (2000)). As explained, Twohig's affidavit creates no material factual dispute and even if it did, the record conclusively shows that Movant suffered no prejudice from Twohig's performance. The Court therefore declines to hold an evidentiary hearing.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Movant's Objections to the PFRD (ECF No. 14) are **OVERRULED**, the PFRD (ECF No. 13) is **ADOPTED**, and the Motion to Vacate (ECF No. 1) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**